The principal question in this case is, whether the bequest to the plaintiff of the income during her life of $100,000 of the debt of the city of New-York, bearing five per cent interest, made by the original will of John Jacob Astor, and the bequest to her, made by the second codicil to the will, of the income during her life of $100,000 deposited in the New-York Life Insurance and Trust Company, bearing interest at five per cent, were satisfied by the testator, before his death, by the transfer by him of an equal amount of the city debt, and of money deposited with the Life Insurance and Trust Company, to William B. Astor, in trust that the interest thereon be paid to her during her life.
In the view I take of this case it is unnecessary to consider the question whether the two legacies in question are specific or general. It may be conceded that they are both general, although, so far as relates to the deposit in the New-York Life Insurance and Trust Company, I think it at least questionable whether the gift thereof is not specific, in that sense of the term that, in case the testator at the time of his death had no deposit with that company, the legacy would have been adeemed were it not for the clause in the will providing against such a contingency.
I think it also unimportant to determine whether the rule established in England, that where a father gives a portion to a child by will, and subsequently makes advances to the child, such advances are prima facie a satisfaction of the portion to the extent of the advancement, unless a contrary intention appears, was ever the law of this state. It is insisted that if such was ever the law of this state, it has been abolished by the provisions of the Revised Statutes (2 R.S., 64, § 42); and if a satisfaction of a legacy given by a will, by an advancement of an equal sum by the testator in his lifetime, is a revocation or alteration of the will, within the meaning of the section of the statute above referred to, then that the English rule above referred to has not been the *Page 49 
law of this state since the adoption of those statutes, whatever the law was prior to that time. The statute in question declares that no will in writing, nor any part thereof, shall be revoked or altered, otherwise than by some other will in writing, or some other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which the will itself is required to be executed, with certain exceptions not applicable to this case.
I think that a satisfaction of a bequest, by an advancement by the testator, is neither a revocation of the bequest or an alteration of the will by which the bequest is made, in the sense with which those terms are used in the statute. A will is defined to be "the legal declaration of a man's intentions of what he wills to be performed after his death." (2 Bl. Com., 499.) Or, as defined by Chancellor KENT (§ 67), "a disposition of real and personal property, to take effect after the death of the testator." As applied to a pecuniary legacy, it is the legal declaration of the testator's intention as to the disposition to be made of the money, or as to who shall have and enjoy the benefits to be derived from its use, after his death. If, after executing the will giving such legacy, he concludes that the enjoyment of such benefits shall commence before his death, his intention, so far as expressed or declared by his will, is neither revoked or altered. The donee will, in such case, enjoy, after the testator's death, all the benefits of the gift which he would have done had the possession of it been postponed until that time, even if the money had previously been invested or used. More especially is that so with regard to the legacies in this case. The intention of the testator, as expressed in his will, was, that the plaintiff should have and enjoy the income of the $200,000 from the time of his death during her life, and on her death the principal to belong to her children; and his intention in that respect is being literally carried out and will be fully and exactly executed, notwithstanding *Page 50 
the enjoyment by her of such income for a period antecedent to the death of the testator. Such enjoyment was in addition to the legacies, and not a revocation or alteration of the will. She has received and will be entitled to receive precisely the same amounts subsequently to the testator's death as if the advancement had not been made, and not a penny more or less, and the same is the case with regard to her children. An advancement intended by the donor to be in lieu of a legacy is, by elementary writers, and judges occasionally, although, as I think, incorrectly, termed a revocation, although more frequently a satisfaction or ademption of the legacy. (Lovelass on Wills,
367-371; Worthington on Wills, 86; Story's Eq. Jur., §§ 1108-1118; 2 Williams on Ex'rs, 946.)
If it be claimed that, in case of such advancement, the donee will, after the death of the testator, hold the money or property advanced under the prior gift, and not under the will, it may be answered that the legacy is merged in the gift. The gift is not in opposition to, but in perfect accordance with the legacy. The former includes the latter. In case of a merger, the estate merged is not extinguished, much less is it revoked.
I do not think that the provisions of the Revised Statutes, referred to, have any application to the ademption or satisfaction of legacies by subsequent gifts.
The English rule, by which an intention on the part of a testator to satisfy a legacy from a parent to a child, by a subsequent gift ejusdem generis, is implied, when the testator has expressed no such intention, has been the subject of frequent animadversion by English jurists. But no such rule is sought to be applied to this case, and consequently it is unnecessary to inquire whether it should be adopted as the law of this state. No intention of Mr Astor, the testator, is attempted to be applied or carried out which he has not plainly and distinctly expressed. Had the testator, by his will, provided that every advancement he should subsequently *Page 51 
make to the plaintiff should satisfy, to the extent of the advance, the legacies to her, without adding the proviso, "if charged in his books of account," no question could have arisen as to the effect of the transfers made to her or for her use, so far as they were intended to be in lieu of the provisions in the will. It is conceded that in such case the transfers would have operated as a satisfaction of the legacies. But it is claimed that, by the proviso in question, the testator attempted to reserve to himself the power to declare his intention, as to the effect to be given to any such advancement, by a simple entry in his books of account. It is said that when a testator in his will provides unconditionally that future advancements shall operate as satisfaction pro tanto of legacies, he thereby declares his intention in relation thereto; but that when he provides by his will that they shall so operate if charged in his books of account, his intention in that respect is not declared by his will. But I think that in either case it must depend upon the intention of the testator, at the time the advancement is made, whether it shall operate as satisfaction. It is true that, in the first case, he expresses his intention at the time of making the will, or rather expresses what he then supposes his intention will be subsequently, when he makes the advance; but I suppose that, in such case, a subsequent cumulative advancement could be made by him to his legatee, without resorting to the formalities requisite to the making of a will. If the donor, at the time of the bestowment, intended the gift to be cumulative, I suppose such intention would make it cumulative, and that the intention might be shown by parol evidence. But if the argument of the plaintiff's counsel be sound, a cumulative gift would, in such case, be a revocation of the will, or of that part of the will declaring the intention of subsequent advances, and consequently subsequent advances could not be made cumulative, except by an instrument executed with the formalities of a will. That the operation of cumulative gifts would be to revoke, quo *Page 52 ad hoc, the declaration of intention in the will, that they should apply in satisfaction of a legacy or legacies, must be admitted; but it appears evident to me that such a declaration of intention may be revoked or rendered inoperative by proof that the gift when bestowed was intended to be cumulative, and not in satisfaction, for the reason that the declaration of such intention is not testamentary in its character, as the intention is to be fully carried out and executed in the lifetime of the testator. In this case the testator declares by his will that his intention as to whether future advances shall operate in satisfaction of legacies, or rather that his intention that they shall so operate, shall be indicated by charges in his books of account. Those charges were to be made in the lifetime of the testator, and were to accompany the gift as a part of the resgestæ. When made, that they indicated the then intention of the testator, the purpose and object of the gift at the time of its bestowal, cannot be and is not disputed; and I think such intention should not be defeated by the provision in the will that the object and intention should be indicated by the charge in the books of account. In fact, I think that, notwithstanding this provision of the will, it was competent for the testator to declare his intention that subsequent advances should satisfy legacies, otherwise than by charges in his books, for the reason above suggested, that the declaration of such intention is not testamentary in its character. It qualifies, and is in fact a part of, or an ingredient in, the bestowment. A man cannot, by a will or by any other instrument, in whatever form and with whatever solemnity executed, either limit or control his power of subsequently, in his lifetime, disposing of his own property, or prescribing the forms by which it must be done to be effectual. So long as he has parted with no title or interest therein, so long he retains the jus disponendi, and the bestowing of property in satisfaction of a legacy in a will is but the legitimate exercise of the jus disponendi It is true that, when this right or power is so *Page 53 
exercised as to take effect after the death of the owner, it must be done by a will or testament; but a bestowment, made by a testator, intended as in satisfaction of a legacy, takes effect before his death, and if, as is attempted to be shown above, the legacy is not thereby revoked, within the meaning of the provisions of the Revised Statutes relating to the revocation of wills, the bestowment or advancement may be made without resorting to the formalities required in the making of a will.
But it is claimed on the part of the plaintiff, and the court below has held, that the transfer by the testator to the use of the plaintiff, during her life, of the $100,000 of the New-York city water stock was not intended by him as a satisfaction of the legacy to her of the use during her life of the $100,000 of the city debt. It is insisted that the charges or entries in his books of account, relative to the city debt or city stock, refer to the $100,000 of such debt or stock given by the second codicil to the six children of the plaintiff. That a mistake was made in the entries in the books is perfectly evident. They describe $100,000 "New-York city water stock," "left" or "bequeathed * * in similar items by a codicil in my will," and so far they correspond with the bequest, in the second codicil, of the $100,000 city debt to the children of the plaintiff. But they further describe this item as "left" or "bequeathed to Mrs. Langdon in similar items," and so far they correspond with the bequest, in the original will, of the $100,000 city debt to the plaintiff. As but two items of $100,000 city debt are mentioned in the will and codicils, that the entries in question refer to one of the two is perfectly evident. Those entries do not correctly describe either item, but in part one and in part the other, and the question is, to which of the two were they intended by the testator to refer; or, in other words, in what did the mistake in the mind of the testator, when he directed the entries to be made, consist? I think the most reasonable conclusion is, that the mistake consisted in *Page 54 
the supposition on his part that the bequest in question to the plaintiff, of the interest during her life of the $100,000 city debt, was made by the second codicil to his will, and not by his original will. Those entries were evidently made with reference to the provision in the first codicil as to the effect of future advances. That provision is: "And inasmuch as I may make advancements or beneficial provisions for persons or purposes
provided for in my will and codicils, it is my direction that such advancements, if charged on my books of account, shall be deemed so much on account of the provision, in my will or codicils, in favor of such persons or purposes." The advancement of the $100,000 city debt, so far as it relates to the person in favor of whom it was made, corresponds precisely with the bequest of the $100,000 city debt contained in the will. In both, the interest is given to the plaintiff during her life, and, after her decease, the principal to her six youngest children. A certificate of the city indebtedness, declaring the interest of herself and of her children therein, was delivered to her by the testator in his lifetime; and it must be presumed that she subsequently, and before her father's decease, received the interest thereon, and has since continued to receive it. The supposition that the entries in the books of account relate to the $100,000 of city indebtedness bequeathed absolutely, by the second codicil, to the children of the plaintiff, implies the further supposition that the testator intended to satisfy, in part, the legacy to the children by an advancement to the plaintiff. But such is not the provision of the will or codicil relative to the effect of advancements. That provision is, that advancements for persons or purposes provided for in the will or codicils shall, if charged in his books of account, be deemed so much on account of the provisions in the will or codicils in favor of such persons or purposes. The $100,000 city indebtedness, given to the plaintiff's children absolutely by the second codicil, is therein described as "the public debt of the city of New-York, bearing five *Page 55 
per cent interest, usually called the water loan," and the entries in the books describe that transferred to the use of the plaintiff during life as "New-York city water stock * * * * at five per cent," while the city indebtedness, the interest on which is given by the original will to the plaintiff for life, is therein described as "the debt of the city of New-York, bearing five per cent interest." It is said that, at the date of the original will, no "water stock" had been created; and as the entries describe "water stock," it is claimed that, in making the entries, he must have had reference to the city indebtedness given by the second codicil, and not to that given by the original will. The two legacies were equal in amount, each bearing the same rate of interest, and, as it must be presumed, each equally well secured; and the material question is, which of the two, the one the interest upon which was given to the plaintiff during life, or the one given to her children absolutely, did the testator, by the transfer referred to by the entries, intend to satisfy? Whether "water stock," or stock created for some other purpose, was transferred, is wholly immaterial. The "water stock" must have been issued prior to the execution of the second codicil; and if, when the entries were made, the testator supposed that the legacy in question to the plaintiff was given by the second codicil, he also supposed it was therein described as "water stock." The memoranda, in the handwriting of the testator, endorsed upon the draft of the second codicil, correspond substantially with the entries. Assuming that the mistake in the testator's mind consisted in supposing that the legacy to the plaintiff was given by the codicil, the memoranda are perfectly consistent with the idea that he intended to satisfy the legacy to her, and not the one to her children. But the same importance should not be given to these memoranda as to the entries in the books, for the reason that the former were made for his own private reference, while the latter were made to indicate, to all interested therein, the object and *Page 56 
intent of the transfers in question. It is quite apparent that he did not, when he made the memoranda, read the instrument on which they were endorsed, for, if he had done so, he would have seen at once that a mistake had been made in the entries, either in describing the legacies intended to be satisfied as "left toMrs. Langdon in similar items," or in describing them as left "by a codicil," and the mistake would have been corrected. The third item of the sixth codicil shows conclusively to my mind that the testator did not intend that the transfer of the city debt should satisfy the legacy in question to the plaintiff's children. That codicil was executed after the entries were made in the books; and by the third item thereof the testator revokes the legacy in his second codicil, of $100,000 city debt, so far as relates to Louisa, one of the six children of the plaintiff, and gives the interest of Louisa's share therein to the plaintiff during life, and the principal, after the plaintiff's death, to her other children. If this legacy had been previously satisfied by an actual transfer of the city debt, it was beyond his control. It was out of his power to revoke it or any part of it. That the testator should attempt to satisfy a legacy to one person by an advance to another, and that, too, under and pursuant to a clause of his will providing for such satisfaction by an advance to the legatee, and only to the legatee, is, to say the least, highly improbable, and an intention to do so should not be imputed to him unless such intention be clearly expressed. To impute such intention would be doing violence to the language of the entries in the books of account, made for the very purpose of expressing his intention in relation thereto; and at least no greater violence is done thereto by adopting the more reasonable conclusion, that he intended, by an advance to the plaintiff, to satisfy the legacy to her.
The remaining questions were correctly disposed of by the Superior Court. That the testator intended that the provision of the first codicil relative to future advances should *Page 57 
be applicable to all the codicils, as well as to the will and first codicil, is perfectly evident from the language of that provision, and the provisions of the eighth item of the fifth codicil put that question beyond dispute.
The reëxecution of the will and codicils in January, 1845, can have no other effect than a republication. The question, in this case, as to the effect of the reëxecution, is confined to the original will and the first two codicils. These had all been previously executed in due form, as was shown before the surrogate, and the reëxecution could not annul the prior execution, or alter or vary the effect of the instruments, any further than as a republication. They were the same instruments after, as before, the reëxecution. That a republication will not revive a satisfied legacy is, I think, established by the authorities. (Powys v. Mansfield, 3 Myl. Craig, 359;Drinkwater v. Falconer, 2 Ves., Sen., 623; Paine v.Parsons, 14 Pick., 318.)
The proceedings before the surrogate, when taken altogether, show that the will and codicils were proved and recorded as nine different instruments, executed at different times, notwithstanding the entry in the surrogate's minutes, that he adjudged the will and codicils to be "the last will and testament of the said testator," c. All the instruments together, although executed at different times, did in fact constitute his will relative to the disposition of his estate after his decease.
I think that the judgment of the general term of the Superior Court should be reversed, and that of the special term affirmed.
All the judges concurring,
Judgment of the Superior Court at general term reversed, and that at special term affirmed. *Page 58